E-FILED
Tuesday, 07 June, 2011 03:56:12 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JULIE MCARDLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09-01150 |
| ) | |
| PEORIA SCHOOL DISTRICT NO. 150, ) | |
| KEN HINTON, in his official and individual ) | |
| capacities, THOMAS BRODERICK, in his ) | |
| individual capacity, MARY DAVIS, in her ) | |
| individual capacity, ) | |
| ) | |
| Defendants. ) | |

## O R D E R

Now before the Court are Defendant Mary Davis' ("Davis") Motion for Summary Judgment [#57] and Defendants Ken Hinton, Thomas Broderick, and Peoria School District No. 150's ("Individual Defendants") Motion for Summary Judgment [#58]. For the reasons set forth below, Davis' Motion for Summary Judgment [#57] is GRANTED. Individual Defendants' Motion for Summary Judgment [#58] is GRANTED. Plaintiff's request to voluntarily dismiss its claims against Ken Hinton and Thomas Broderick is accepted, and Ken Hinton and Thomas Broderick are terminated as parties. Plaintiff's request to withdraw her claim under the Whistleblower Act is also accepted, and this claim will be stricken.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as one of Plaintiff's claims arises under the Civil Rights Act of 1871. 42 U.S.C. § 1983. The Court also

1

has supplemental jurisdiction over Plaintiff's state law claims for breach of contract, tortious interference with a contract, and claim under the Illinois Whistleblower Act. 28 U.S.C. § 1367(a).

## BACKGROUND

On August 4, 2008, Plaintiff Julie McArdle ("McArdle") was hired by Peoria School District 150 ("District 150") as the principal of Lindbergh Middle School. McArdle's employment contract covered the period from July 1, 2008 until June 31, 2010 and contained a provision allowing for early termination by either party after one year of McArdle's employment. At this time, Kenneth Hinton ("Hinton") was the superintendent, Herschel Hannah ("Hannah") was the assistant superintendent, and Mary Davis ("Davis") was the Academic Officer of District 150 and previous principal of Lindbergh Middle School ("Lindbergh"). Thomas Broderick ("Broderick") was the vice president of the Board of Education for District 150. Davis was McArdle's immediate supervisor. Davis reported to Hannah; Hannah reported to Hinton; and Hinton reported to the Board of Education for District 150.

Beginning in October of 2008, Davis contacted McArdle regarding complaints filed against McArdle by parents. Hinton also recieved complaints against McArdle filed by the Parent Teacher Organization ("PTO") and met with PTO President Tania Hoerr ("Hoerr") about difficulties with McArdle. Also during this time, members of the Board also received parent complaints about McArdle's conduct and personality. Throughout the 2009-2010 academic year, Hinton became concerned with the situation at Lindbergh due to an allegedly divided staff and parent network. Hinton brought the situation to the attention of the Board of Education on April 6, 2009. On April 21, 2009, Broderick contacted McArdle on behalf of the Board of

Education to discuss early termination. On April 27, 2009, the Board of Education conducted a special meeting and voted 4-1 to terminate McArdle's employment effective June 30, 2009. In terminating her employment, the Board exercised the no-cause buy-out provision of McArdle's contract, and subsequently payed McArdle liquidated damages pursuant to this contract provision.

During her employment as principal at Lindbergh, McArdle discovered a number of financial and administrative irregularities attributable to Davis during Davis' tenure as principal of Lindbergh. These irregularities allegedly included: (1) a student teacher who agreed to work without pay was being paid a teacher's aide salary; (2) a private counselor was charging private fees contrary to District 150's obligation to provide such services for free as a part of a public education; (3) addresses were falsified to show students living within District 150's boundaries when they did not physically live within those boundaries; and (4) financial discrepancies regarding the Student Activities Funds, which are the only funds that the Lindbergh Principal handles. Davis has since been indicted in the Circuit Court of Peoria County, Illinois on eight counts of felony theft and eight counts of felony official misconduct related to her use of the Student Activities Fund and other miscellaneous personnel issues while principal for Lindbergh.

As early as October of 2008, McArdle attempted to discuss the financial discrepancies with Davis, her current superior and previous Lindbergh principal. Davis responded in December, telling McArdle that the Lindbergh financial books had already been audited. In January of 2009, Davis began allegedly attempting to discredit McArdle in her reports to Hinton, her evaluations of McArdle, and her dealings with the PTO and other parents. McArdle continued to discover inconsistencies in the Student Activities Fund. After McArdle discovered

3

the financial irregularities in the Student Activities Fund, and after she learned that the Board intended to terminate her contract, McArdle sought advice of counsel on April 23, 2009.  On April 24, 2009, McArdle emailed Hinton and Broderick to outline the theft and other incidents of purported official misconduct.  McArdle also filed a police report with the Peoria Police on April 24, 2009.  When Hinton and Davis approached the Board of Education on April 27, 2009, these charges had been filed, and Hinton, Broderick, and Davis were aware of them.

On December 23, 2009, McArdle filed an Amended Complaint alleging a federal claim under Section 1983 for deprivation of her First Amendment rights against all named Defendants.  McArdle also alleged a state law breach of contract claim and a claim under the Illinois Whistleblower Act against the District.  Finally, McArdle alleged a state law tortious interference with contract claim against Defendant Mary Davis.  All Defendants now seek summary judgment on these claims.  Plaintiff, in her Response to the District's Motion for Summary Judgment [#68], seeks to voluntarily dismiss her claims against Ken Hinton and Thomas Broderick and her claim under the Whistleblower Act.  In granting this voluntary dismissal, the Court will not consider the arguments made in Defendants' Motion for Summary Judgment [#58] on these claims, and the Court held oral arguments on the Motion on May 19, 2011 at 1:00 p.m.  Plaintiff filed a Motion to Supplement [#90] his argument, which this Court granted and afforded Defendants the opportunity to respond.  The matter has been fully briefed. This Order follows.

**DISCUSSION**

Summary judgment should be granted where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may meet its burden of showing an absence of material facts by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the nonmoving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Federal Rule of Civil Procedure 56(e) requires the nonmoving party to go beyond the pleadings and produce evidence of a genuine material issue for trial. *Celotex Corp.*, 477 U.S. at 324. This Court must then determine whether there is a need for trial — whether, in other words, there are any genuine factual issues that can properly be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. *Anderson*, 477 U.S. at 249; *Hedberg v. Indiana Bell Tel. Co., Inc.,* 47 F.3d 928, 931 (7th Cir. 1995). Finally, where a party bears the burden of proof on an issue, he or she must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact requiring trial. *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993).

I. **First Amendment Retaliation Claim under Section 1983 against District 150 and Mary Davis in her individual capacity**

5

In order to establish a prima facie case of unlawful First Amendment retaliation under Section 1983, a public employee must present a genuine issue of material fact that (1) she engaged in constitutionally protected speech; (2) she suffered a deprivation likely to deter her from exercising her First Amendment rights; and (3) her speech was a motivating factor in her employer's adverse action. *Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 670 (7th Cir. 2009).

If a plaintiff establishes a prima facie case, the burden shifts to the employer to demonstrate that it would have taken the adverse employment action even in the absence of the protected speech. *Id.* If the employer meets this burden, then the plaintiff may overcome the motion for summary judgment by providing evidence sufficient to allow a reasonable factfinder to find that the employer's reasons were merely a pretext for the adverse employment action for exercising her First Amendment rights. *Id.*

**A.     McArdle's Prima Facie Case of Retaliation**

At the April 19, 2011 oral argument, counsel for the District disputed that McArdle satisfied the second prong of the prima facie case, namely that she suffered an adverse employment action. Counsel argued that, because the District bought-out McArdle's contract and that she was compensated $5,000 according to the provisions of her contract, she did not suffer an adverse employment action. The Court disagrees. In order to establish an adverse employment action for the purpose of a First Amendment retaliation claim, the plaintiff must show "any deprivation under color of law that is likely to deter the exercise of free speech." *Mosely v. Board of Educ. of City of Chicago*, 434 F.3d 527, 534 (7th Cir. 2006) (quoting *Power v. Summers*, 226 F.3d 815, 820 (7th Cir. 2000)). Given the broad definition of "adverse

6

employment action," McArdle's termination, regardless of compensation, is sufficient under this prong to survive summary judgment. The remaining issues for this Court, therefore, are whether McArdle engaged in constitutionally protected speech and whether a reasonable factfinder could determine that her speech was the motivating factor behind her termination.

In order to establish whether a public official engaged in constitutionally protected speech, the Court considers whether McArdle "spoke in the capacity of a private citizen and spoke on a matter of public concern." *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 704 (7th Cir. 2010) (quoting *Valentino*, 575 F.3d at 671). A public employee is not speaking as a private citizen for First Amendment purposes when the employee makes statements pursuant to their official duties. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Formal job descriptions may not, however, be overly broad in order to shield employers from liability. *Id.* at 425.

The Illinois School Code provides that "the principal shall assume administrative responsibilities and instructional leadership . . . in accordance with reasonable rules and regulations . . . for the planning, operation, and evaluation of the educational program of the attendance area to which he or she is assigned." 105 ILCS 5/10-21.4(a). A principal's duties are further determined by the individual school boards, but their "primary responsibility is in the improvement of instruction." *Id*.

Plaintiff argues that McArdle's duties did not include reviewing the use of the Student Activities Fund in the year prior to her own employment. Plaintiff further asserted at oral argument that McArdle was under no obligation to evaluate the funds prior to her tenure as principal. Thus, according to Plaintiff, McArdle was acting as a private citizen when she discovered and reported Davis' alleged criminal behavior in regards to the Student Activities

7

Fund.

Defendants contend that the School Code assigns the principal "administrative responsibilities," which would include staff supervision and budgeting associated with what Plaintiff herself refers to as "small monies paid for student activities." [#68, 27]. Plaintiff also admits that she was given the checkbook and the account information for the activities fund from Davis' term as principal when McArdle started her own term, and that she understood that the principal is responsible for reviewing and writing checks and deposits for the Student Activities Fund. *Id.* In the record before the Court, it does appear that McArdle's formal and practical responsibilities as principal included oversight of the Student Activities Fund and would include reporting any discovered misconduct associated with the it. Thus, no reasonable jury could conclude that McArdle was acting as a private citizen when she discovered Davis' alleged criminal activity and reported this activity to District supervisors.

If, however, McArdle was found to be speaking as a private citizen, the Court next considers the content, form, and context of McArdle's speech to determine whether she spoke on a matter of public concern. Purely personal grievances are not afforded Constitutional protection under the First Amendment. *Sullivan v. Ramirez*, 360 F.3d 692, 699 (7th Cir. 2004). The fact that an employee has a personal stake in the subject matter of the speech, however, does not remove the speech from the scope of public concern. *Phelan v. Cook County*, 463 F.3d 773, 791 (7th Cir. 2006). The speech must articulate a specific grievance or concern. *Wernsign v. Thompson*, 423 F.3d 732, 751 (7th Cir. 2005).

In this case, Defendants argue that McArdle reported Davis' alleged conduct only after McArdle learned that the District intended to terminate her contract. McArdle first suspected

Davis' misuse of the Student Activities Fund in the fall of 2008. McArdle did not, however, report these discrepancies to personnel officers until April 23, 2009, only two days after she was informed by Broderick and Hinton that her contract would be bought-out by the School District at the end of the academic year.[1] Furthermore, McArdle initially only reported Davis' alleged illegal conduct to the same personnel officers, Broderick and Hinton, who notified McArdle of her future termination. Defendants assert, therefore, that McArdle's motivation in reporting Davis' conduct was purely personal and not a matter of public concern.

Plaintiff does not, in her written response, argue that her speech was a matter of public concern. Plaintiff's only statement on this subject is a subheading in her response to Defendants' Motion, but the content of her response does not contain any argument on this subject. At oral argument, Plaintiff's counsel stated that theft of public funds is clearly a matter of public concern. While the Court agrees that this type of theft is ordinarily considered a matter of public concern, there is no genuine issue of material fact that McArdle's own motivation in reporting the theft was in an attempt to avoid her own employment termination. Thus, there is no issue of material fact that the context and form of McArdle's speech was a personal grievance in response to the District's announcement that it would be terminating her contract.

---

[1] In order to be completely clear, here is a timeline of the events as reflected by the record before the Court:

| Date | Event |
|---|---|
| Fall of 2008 | McArdle first discovers financial discrepancies in Student Activities Fund |
| April 21, 2009 | Broderick calls McArdle to notify her that her contract will be bought-out |
| April 23, 2009 | McArdle visits an attorney to discuss her termination and Davis' alleged indiscretion |
| April 24, 2009 | McArdle files police report and emails Hinton and Broderick about Davis |
| April 27, 2009 | Board formally exercises the buy-out provision of McArdle's contract |

9

The final element of a prima facie case for First Amendment retaliation is whether McArdle's speech was a motivating factor in her termination. *Massey v. Johnson*, 457 F.3d 711, 717 (7th Cir. 2006). Plaintiff's own evidence shows that McArdle did not report Davis' alleged illegal conduct until after learning that the District intended to terminate her contract. When Broderick, the vice-president of the Board of Education, called McArdle on April 21, 2009, McArdle was given actual notice of her supervisor's decision to exercise the buy-out provision of her contract. The record before the Court illustrates, therefore, that the decision to terminate McArdle had effectively already been made, and McArdle was notified of this decision before she engaged in allegedly constitutionally protected speech. While some of the Board members saw McArdle's email regarding Davis' alleged criminal conduct, the superintendent and vice-president of the Board had already decided to terminate McArdle's employment and had effectively and clearly communicated this decision to her before she ever publicized Davis' alleged criminal activity. Thus, no reasonable factfinder could conclude that the District was motivated by McArdle's future speech when deciding to exercise the early termination provision of her contract.

**B.     Pretext**

Court next considers Defendants' articulated reasons for their termination decision and whether these reasons were mere pretext for discrimination. "Pretext is more than a mistake on the part of the employer; it is a phoney excuse." *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004). The plaintiff may prove pretext by establishing that (1) the employer's reason had no basis in fact; (2) that the explanation was not the real reason for its action; or (3) that the reason stated was insufficient to warrant the adverse job action. *Atanus*, 520 F.3d at 674.

In this process, the Court does not determine whether the employment decision was "correct business judgment" nor does the Court act as a "super-personnel department" by reviewing the decisions of the employer. *Ptasznik v. St. Joseph Hosp.*, 464 F.3d at 696; *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 889 (7th Cir. 2001).

As illustrated in the record before this Court, the District had received numerous complaints from parents and coworkers about McArdle's actions and statements while principal. McArdle was also informed of these complaints and given an opportunity to correct her actions and attitude before the District chose to terminate her employment. These complaints did not come solely from Davis, and there is no evidence before the Court to establish a genuine issue of material fact that Davis orchestrated these complaints, as argued by Plaintiff. Thus, there is no genuine issue of material fact that the District's termination decision was mere pretext for a retaliatory discharge.

**C.  Prior restraint**

Plaintiff also asserts that Davis intentionally orchestrated McArdle's termination, which arguably constituted prior restraint to deter McArdle from reporting Davis' alleged illegal conduct. Plaintiff attempts to rest its case on Davis' use of the Fifth Amendment during her deposition, which Plaintiff argues, requires the Court to draw all inferences against Davis in this case. While adverse inferences may be drawn against a party who invokes her Fifth Amendment rights against self-incrimination, this privilege may not preclude summary judgment where the elements of the case were not met. *Curtis v. M&S Petroleum*, 174 F.3d 661 (5th Cir. 1999); *See also LaSalle Bank Lake View v. Seguban*, 54 F.3d 387 (7th Cir. 1995) (finding that invoking the privilege does not impose liability on its own even though adverse inferences may be drawn

11

against the party invoking the privilege). In this case, where the elements of the prima facie case have not been met, summary judgment is inappropriate when relying on a party's invocation of their Fifth Amendment privilege.

Plaintiff, at oral argument, also stated that Mary Davis was effectively the decisionmaker involved in terminating McArdle's employment. In effect, Plaintiff argued that Davis provided all of the information that led to McArdle's termination. This assertion is not supported by the record before the Court. When making its initial determination, Hinton and Broderick considered numerous complaints made by parents, students, and teachers against McArdle in addition to the performance reviews and personality conflicts reported by Davis. The Board, when finalizing the decision to terminate McArdle, also considered evidence in addition to and not provided by Davis. Thus, a reasonable juror could not find that Davis was the decisionmaker responsible for McArdle's termination.

In this case, Plaintiff cannot establish a genuine issue of material fact that Davis or the District violated her First Amendment rights other than Davis' invocation of her privilege against self-incrimination. Thus, Plaintiff does not present evidence sufficient for a reasonable jury to conclude that Davis or the District is liable for prior restraint of McArdle's First Amendment rights.

### III.  Breach of Contract against District 150

Defendants argue that the District terminated its contract with McArdle pursuant to the contract's provisions providing for early termination. This provision states that "either party may terminate employment with or without cause providing the party so desiring to terminate gives the other written notice of such intention at least 60 days prior to the date of such proposed

12

termination." It is not disputed that the District gave McArdle sixty days notice before her termination was effective.

Plaintiff asserts that the District violated the obligation of good faith and fair dealing when it terminated McArdle's contract according to the early termination provision. In general, a covenant of good faith and fair dealing is implicit in every contract. *J&B Steel Contractors, Inc. v. C. Iber & Sons, Inc.*, 162 Ill.2d 265, 642 N.E.2d 1215 (1994). This implied covenant requires that the party with discretion under the contract exercise that discretion reasonably and with proper motive. *Saunders v. Michigan Ave. Nat. Bank*, 278 Ill.App.3d 307, 662 N.E.2d 602 (1st Dist. 1996). The covenant does not, however, form the basis of an independent tort nor does it overrule or modify the express terms of the contract. *Northern Trust Co. v. VIII South Michigan Associates*, 278 Ill.App.3d 355, 662 N.E.2d 480 (1st Dist. 1995).

In this case, the District's termination of McArdle's contract was reasonable and with proper motive given the problematic interactions between McArdle and members of the community and staff. Furthermore, the express terms of the contract provided for the ability for either party to terminate the contract at the one-year mark. This term is clear and unambiguous and, thus, cannot be overruled by the implied covenant of good faith and fair dealing. Additionally, there is nothing in the language of the contract nor in the implied covenants under federal or state law to find that the First Amendment was an implied term of the contract, as argued by Plaintiff. Thus, there is no genuine issue of material fact regarding whether the District breached its contract with McArdle.

**II.     Tortious Interference with Contract Claim against Davis**

In order to establish a prima facie case for tortious interference with a contract in Illinois,

a plaintiff must show (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by defendant's wrongful conduct; and (5) damages. *Voelker v. Porsche Cars North America, Inc.*, 353 F.3d 516, 527-28 (7th Cir. 2003).

In this case, as discussed above, the District's termination of McArdle's contract was reasonable and with proper motive given the problematic interactions between McArdle and members of the community and staff. Furthermore, the express terms of the contract provided for the ability of either party to terminate the contract at the one-year mark. This term is clear and unambiguous and, thus, cannot be overruled by the implied covenant of good faith and fair dealing. Thus, there is no genuine issue of material fact regarding whether the District breached its contract with McArdle.

Even if the District breached its contract, no reasonable jury could conclude that Davis intentionally and unjustifiably interfered with McArdle's contract with the District. Plaintiff cites to numerous parent-principal interactions that she claims are evidence of Davis's "efforts to terminate Julie McArdle's second year of her employment." (#72-1, 5). Plaintiff does not provide any evidence that these negative interactions were orchestrated by Davis nor that Davis had any role in several parents complaining about McArdle's actions as principal. While Plaintiff does establish that members of the Board relied, in part, on Davis's statements in their decision to terminate McArdle, there is no evidence before the Court that Davis's statements were unjustifiable given McArdle's negative job performance and interpersonal skills. A reasonable jury could not, therefore, find that Davis tortiously interfered with McArdle's

14

contract with the District.

## CONCLUSION

For the reasons set forth above, Davis' Motion for Summary Judgment [#57] is GRANTED, and Individual Defendants' Motion for Summary Judgment [#58] is GRANTED. This case is now terminated. Plaintiff's request to voluntarily dismiss its claims against Ken Hinton and Thomas Broderick is accepted, and Ken Hinton and Thomas Broderick are terminated as parties. Plaintiff's request to withdraw her claim under the Whistleblower Act is also accepted, and this claim will be stricken. This matter is terminated.

Entered this   7th    day of June, 2011.

      s/ Michael M. Mihm
      Michael M. Mihm
      United States District Judge